IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:18-cr-00465-JR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| CAMERON M. CRUSCIAL, LAUREN M. HALCOMB-HUDSON, MACKENZIE G. HILMES, EMMA C. MAVROS, ANNA V. MOKLAYK, KATHRYN A. PYLAND, and STUART W. TANQUIST, | |
| Defendants. | |

RUSSO, Magistrate Judge:

Plaintiff the United States of America filed an Information against defendants Cameron Cruscial, Lauren Halcomb-Hudson, Mackenzie Hilmes, Emma Mavros, Anna Moklayk, Kathryn Pyland, and Stuart Tanquist[1] alleging misdemeanor violations of 41 C.F.R. § 102-74.390(b) (unreasonably obstructing the usual use of entrances) and 41 C.F.R. § 102-74.385 (failing to comply with lawful direction).

Defendants jointly move for a jury trial. Additionally, Holcomb-Hudson moves to dismiss all charges pursuant to Fed. R. Crim. P. 12(b)(1); Cruscial, Hilmes, Mavros, Moklayk, and Pyland subsequently joined in that motion. Oral argument was held on February 26, 2019. Pursuant to

---

[1] After Tanquist passed away, the charges again him were dismissed.

Page 1 – OPINION AND ORDER

defendants' joint request at oral argument, going forward the Court will assume joinder by all defendants in any defense motion unless notified otherwise. For the reasons set forth below, defendants' motions are denied.

## BACKGROUND

The federal government leases a privately-owned building located at 4310 S.W. Macadam Avenue, Portland, Oregon ("Macadam Building"). More than 150 federal employees and contractors work at the Macadam Building for several federal agencies, including certain divisions of Immigration and Customs Enforcement.

Beginning on June 17, 2018, individuals began assembling around the Macadam Building to protest presidential immigration policies. On June 19, 2018, protesters erected tents and other temporary structures that impeded vehicle and pedestrian entrances to the Macadam Building. On June 20, 2018, the Macadam Building was closed due to purported safety concerns.

From June 25 through June 27, 2018, Federal Protective Service ("FPS") officers provided written and verbal notice to protestors, including defendants, that their continued obstruction of the entrances to the Macadam Building impeded government employees and the public from utilizing federal services and violated federal law. Also on June 25, FPS conspicuously posted a notice advising it was illegal to block the driveway or entrance of the Macadam Building, and that "[i]ndividuals who continue to obstruct the entrance of this federal facility will be subject to arrest and prosecution in federal court under 41 C.F.R. § 102-74.390 and 41 C.F.R. § 102-74.450." Pl.'s Resp. to Mot. Dismiss Ex. 1 (doc. 48).

On June 28, 2018, at approximately 5:30 a.m., FPS officers gave a series of verbal dispersal orders, directing protestors to cease blocking the entrances of the Macadam Building. Protestors were warned that if they did not comply, they would be subject to arrest on a federal violation.

Defendants did not leave the Macadam Building and instead linked arms. At 5:38 a.m., FPS officers arrested defendants, charging each with two Class C misdemeanors under 41 C.F.R. § 102-74.390 and 41 C.F.R. § 102-74.385.[2] After plea negotiations failed, defendants were joined in an Information relating to the aforementioned offenses.

## STANDARD

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). A pretrial motion requesting dismissal "cannot be used as a device for a summary trial of the evidence" and the court "should not consider evidence not appearing on the face of the indictment." United States v. Boren, 278 F.3d 911, 914 (9th Cir. 2002). In other words, a motion to dismiss is generally only "capable of determination" before trial "if [the motion] involves questions of law rather than fact." United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1452 (9th Cir. 1986) (internal citations and quotations omitted).

## DISCUSSION

Defendants raise three legal theories in support of dismissal: violation of the "same offense" doctrine, unconstitutional delegation of Congressional power, and facial and as applied void for vagueness and overbreadth. Def.'s Mot. Dismiss 2 (doc. 43). In addition, defendants

---

[2] Section 102-74.390, in relevant part, makes it unlawful to "exhibi[t] disorderly conduct or exhibi[t] other conduct on [federal] property that . . . Unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots." 41 C.F.R. § 102-74.390(b). Section 102-74.385 specifies that "[p]ersons in and on [federal] property must at all times comply with official signs of a prohibitory, regulatory or directory nature and with the lawful direction of Federal police officers and other authorized individuals." 41 C.F.R. § 102-74.385. A proven charge under either regulation carries the following penalties: a potential fine "under title 18 of the United States Code, imprison[ment] for not more than 30 days, or both." 41 C.F.R. § 102-74.450.

request "the Court exercise its discretion to empanel a jury to hear this matter." Defs.' Mot. Jury Trial 1 (doc. 39).

I.  **Motion to Dismiss**

Defendants contend dismissal is proper in relation to all charges because 41 C.F.R. § 102-74.390 and 41 C.F.R. § 102-74.385 are: (1) an invalid "Congress[ional] delegation of rule-making authority [that] lacked specificity and failed to provide meaningful constraint on the Department of Homeland Security's exercise of discretion"; and (2) "unconstitutionally void for vagueness and overbroad in violation of due process." Def.'s Mot. Dismiss 4-13 (doc. 43). Alternatively, defendants argue dismissal of at least one count is warranted because each "charge[s] for violation of the same conduct" in contravention of the "same offense" doctrine. Id. at 3-4 (doc. 43).

A.  **Unconstitutional Delegation of Power**

Congress may not delegate its legislative power to another branch of government. Touby v. United States, 500 U.S. 160, 165 (1991). Congress may nonetheless seek assistance from other branches when legislating, so long as it provides guidance in conjunction with the delegated authority. Id. Specifically, Congress must "clearly delineate the general public policy, the public agency which is to apply it, and the boundaries of this delegated authority." Mistretta v. United States, 488 U.S. 361, 372-73 (1989).

It is undisputed 41 C.F.R. § 102-74.390 and 41 C.F.R. § 102-74.385 were created pursuant to 40 U.S.C. § 1315(c). United States v. Baldwin, 745 F.3d 1027, 1030 (10th Cir. 2014). Under 40 U.S.C. § 1315(c), Congress authorized the Department of Homeland Security to establish regulations with criminal penalties relating to the protection of federal property:

> (1) IN GENERAL. – The Secretary, in consultation with the Administrator of General Services, may prescribe regulations necessary for the protection and administration of property owned or occupied by the Federal Government and persons on the property. The regulations may include reasonable penalties, within

the limits prescribed in paragraph (2), for violations of the regulations. The regulations shall be posted and remain posted in a conspicuous place on the property.

(2) PENALTIES. – A person violating a regulation prescribed under this subsection shall be fined under title 18, United States Code, imprisoned for not more than 30 days, or both.

40 U.S.C. § 1315(c).

Defendants rely predominantly on dicta in Baldwin; a dissent from the denial of a petition for rehearing en banc in United States v. Nichols, 784 F.3d 666, 667-77 (10th Cir. 2015); a concurrence in Sessions v. Dimaya, 138 S.Ct. 1204, 1223 (2018); and oral argument comments in a case currently pending before the Supreme Court – all generated by the same judge – to support the proposition that 40 U.S.C. § 1315 represents an unconstitutional delegation of power. Def.'s Mot. Dismiss 6-10 (doc. 43); Def.'s Reply to Mot. Dismiss 5-7 (doc. 55). Significantly, however, defendants acknowledge that "[a] number of courts have rejected nondelegation challenges to this statute." Def.'s Mot. Dismiss 4 n.1 (doc. 43) (collecting cases).

This District has addressed this precise issue and held that no violation of the non-delegation doctrine exists. United States v. Mumford, 2017 WL 652449, *3-4 (D. Or. Feb. 16, 2017) (citing United States v. Cassiagnol, 420 F.2d 868, 876 (4th Cir. 1970); United States v. Crowthers, 456 F.2d 1074, 1077 (4th Cir. 1972); and United States v. Adams, 502 F.Supp. 21, 25 (S.D. Fla. 1980)). Defendants here assert the exact arguments rejected in Mumford. Compare id., with Def.'s Mot. Dismiss 4-10 (doc. 43). Although not binding, the Court finds Mumford and Cassiagnol[3] persuasive concerning the delegation of power issue and adopts their reasoning as its own.

---

[3] Defendants contend Cassiagnol is "fifty-year[s]-old [and] outdated." Def.'s Reply to Mot. Dismiss 5 (doc. 55); Hearing (Feb. 26, 2019). Nevertheless, Cassiagnol remains good law and courts, including those within the Ninth Circuit, continue to cite to it as authority. See, e.g., United

Page 5 – OPINION AND ORDER

Specifically, the Court finds that 40 U.S.C. § 1315(c) adequately limits the scope of actions on federal property, in that the statute describes the general policy, makes clear which agency is to apply the regulations, specifies the bounds of the delegated authority, and requires that the regulations be posted conspicuously. As Mumford observed, "[t]o require Congress specifically to enumerate GSA's duties would be to require the impractical, if not the impossible." Mumford, 2017 WL 652449 at *4 (quoting Cassiagnol, 420 F.2d at 876). Furthermore, this delegation of power "is not unusual and Congress has delegated similar powers to the National Park Service, Forest Service, and Bureau of Land Management, to name a few." Id. The Court therefore joins myriad other courts in resolving that 40 U.S.C. § 1315(c) constitutes an appropriate delegation of power. Defendants' motion to dismiss is denied in this regard.

B. **Void for Vagueness and Overbreadth**

The Due Process clause requires that a criminal statute should, at a minimum, "provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits in a manner that does not encourage arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703, 732 (2000). In resolving an as applied challenge, courts must determine whether the statute is vague "as applied to the particular facts at issue, for [a defendant] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." United States v. Szabo, 760 F.3d 997, 1003 (9th Cir. 2014) (citation and internal quotations omitted). If the challenged terms "are clear in their application to [the defendant's] conduct . . . [the] vagueness challenge must fail." Id. (citation and internal quotations omitted).

---

States v. Torres, 2006 WL 3826793, *4 (D. Hawai'i Dec. 27, 2006), recons. denied, 2007 WL 2263062 (D. Hawai'i Aug. 3, 2007); United States v. Zagorovskaya, 2014 WL 12665158, *7 (C.D. Cal. Oct. 8, 2014), aff'd, 628 Fed.Appx. 503 (9th Cir. 2015).

In determining whether a statute is overbroad, courts review whether it is conducive to a reasonable limiting construction. United States v. Stansell, 847 F.2d 609, 613-14 (9th Cir. 1988). If the regulation at issue covers both conduct and speech, the overbreadth "must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Id. (citation and internal quotations omitted). As a result, a statute will not be invalidated as unconstitutionally broad unless it "reaches a substantial number of impermissible applications." Szabo, 769 F.3d at 1004 (citation and internal quotations omitted).

Initially, the Court notes the Ninth Circuit has examined the predecessor to 41 C.F.R. § 102-74.385 and held it to be constitutional and not impermissibly vague or overbroad. Stansell, 847 F.2d at 610-16.[4] Likewise, the First Circuit rejected a vagueness attack to the prior version of 41 C.F.R. § 102-74.390(b). United States v. Sachs, 679 F.2d 1015, 1016-18 (1st Cir. 1982). Although subsection (b) has not been evaluated by the Ninth Circuit, other subsections of the predecessor to 41 C.F.R. § 102-74.390 have been found neither unduly vague nor overly broad. See, e.g., United States v. Brice, 926 F.2d 925, 930-31 (9th Cir. 1991). This precedent effectively forecloses defendants' facial void for vagueness and overbreadth arguments.

Regardless, even assuming it does not, the Court finds that 41 C.F.R. § 102-74.390(b) and 41 C.F.R. § 102-74.385 are not vague or overbroad. These regulations, especially when read in context with the entire regulatory scheme, describe with sufficient definitiveness the range of conduct that may be constitutionally controlled on federal property in order to preserve the normal

---

[4] Defendants suggest Stansell is "outdated" and "no longer persuasive in light of . . . intervening precedent." Def.'s Reply to Mot. Dismiss 10-11 (doc. 55). Stansell has not been overturned and, as such, constitutes primary, binding authority.

functioning of federal facilities, including what type of orders and directions a person must obey, and a fair warning of the actions that are proscribed.[5]

Moreover, defendants' assertion that the regulations are vague as applied because "[a] person of ordinary intelligence would not understand that assembling near a closed building before its business hours and while it was closed 'unreasonably' obstructed the 'usual use' of its entrances in violation of § 102-74.390(b)" is unavailing. Def.'s Mot. Dismiss 13 (doc. 43). Defendants' charges do not arise out of federal access hindrance outside of ordinary business hours. Rather, the central tenant of the government's allegations is that defendants deliberately created a barrier to the Macadam Building's human and vehicle entrances over the course of several days, despite repeated warnings that such conduct was in violation of federal law and orders to disperse. In fact, the Macadam Building was closed on Wednesday, June 20, 2018, allegedly due, in part, to protestor action.

A person of ordinary intelligence would understand that significant and persistent interference with the ingress and egress of human and vehicle traffic on federal property constitutes an unreasonable obstruction of the usual use of government entrances, offices, and parking lots. Defendants are free to contest the application of these regulations to their actions at trial; this does not alter the fact that § 102-74.390(b) clearly prohibits the conduct alleged in this case. As such, defendants' overbreadth, and facial and as applied void for vagueness challenges, fail.

---

[5] Defendants' contention regarding the "lack of a scienter element" does not alter this Court's analysis. Def.'s Mot. Dismiss 12 (doc. 43). Both this and other circuits have imputed a mens rea of "knowingly" in relation to the prior version of 41 C.F.R. § 102-74.390. See, e.g., Brice, 926 F.2d at 928-29; Baldwin, 745 F.3d at 1032-33; see also Zagorovskaya, 628 Fed.Appx. at 504 ("knowingly" means the defendants "generally must know the facts that make [their] conduct fit the definition of the offense . . . even if [they] do not know that those facts give rise to a crime") (citation and internal quotations omitted).

### C. Double Jeopardy

The Fifth Amendment guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Individuals are therefore protected from successive prosecutions and "successive punishments" for the same offense. United States v. Dixon, 509 U.S. 688, 696 (1993). Courts determine whether a defendant may be punished twice for the "same offense" be applying the test set forth in Blockburger v. United States, 284 U.S. 299, 304 (1932). Specifically, "[a]n indictment is multiplicitous when it charges multiple counts for a single offense, producing two penalties for one crime and thus raising double jeopardy questions." United States v. Stewart, 420 F.3d 1007, 1012 (9th Cir. 2005) (citation omitted). Conversely, "two counts within an indictment are not multiplicitous if each separately violated statutory provision requires proof of an additional fact which the other does not." Id. (citations and internal quotations omitted).

As a preliminary matter, both parties use the facts charged in the Information to support their respective double jeopardy arguments. See, e.g., Def.'s Reply to Mot. Dismiss 2-4 (doc. 55); Hearing (Feb. 26, 2019). However, it is well-established that Courts "look to the elements of the offenses alone, rather than the way they are charged in the indictment" to determine whether two counts are multiplicitous. United States v. Nash, 115 F.3d 1431, 1437 (9th Cir. 1997); see also United States v. Davenport, 519 F.3d 940, 943-44 (9th Cir. 2008) ("[t]he Supreme Court has recognized that comparing statutes to determine whether one set of elements is a subset of another requires a purely textual comparison") (citing Carter v. United States, 530 U.S. 255, 260-61 (2000)). The recent Ninth Circuit case cited by defendants in their reply brief reaffirms this longstanding principal. See United States v. Mota, 2019 WL 719113, *1 (9th Cir. Feb. 20, 2019) (looking at the actual language of the criminal statutes under which the defendant was convicted

to conclude a charge under 18 U.S.C. § 924(c) was multiplicitous of a charge under 18 U.S.C. § 924(j)(1), which expressly listed "a violation of subsection (c)" as an element) (citing Davenport, 519 F.3d at 943). Accordingly, the proper legal standard to review a double jeopardy argument in this context is the plain language of 41 C.F.R. § 102-74.390(b) and 41 C.F.R. § 102-74.385.

The defendants argue "[a] person who 'unreasonably obstructs the usual use of entrances' . . . under 41 C.F.R. § 102-74.390, necessarily violates the regulation that [he or she] 'comply with official signs of a prohibitory, regulatory or directory nature' under 41 C.F.R. § 102-74.385," citing Ball v. United States, 470 U.S. 856 (1985), and Mumford, 2017 WL 652449. Def.'s Mot. Dismiss 3-4 (doc. 43).

The Court has thoroughly reviewed Ball and Mumford and finds both cases distinguishable. In Ball, the defendant was convicted of receiving a stolen firearm and being a felon in possession. Ball, 470 U.S. at 857-58. The Supreme Court vacated one of the convictions because statutes directed at "receipt" and "possession" of a firearm amounted to the "same offense." Id. at 862-64. In other words, proof of receipt "necessarily" included proof of possession. Id.

In Mumford, the defendant was charged with three counts: (1) disorderly conduct in violation 41 C.F.R. § 102-74.390(c) ("Count 1"); (2) failing to comply with signs prohibiting conduct that impedes or disrupts the performance of official duties by government employees in violation of 41 C.F.R. § 102-74.385 ("Count 2"); and (3) failing to comply with lawful direction in violation of 41 C.F.R. § 102-74.385 ("Count 3"). Mumford, 2017 WL 652449 at *2, 4-5. The defendant argued Counts 1 and 2 were multiplicitous, but explicitly did not assert that "the indictment is multiplicitous because of Count 3, or that Count 1 is a lesser included offense of Count 3." Id. at *5. The court found the defendant's argument – that "Count 2 charges Mr.

Page 10 – OPINION AND ORDER

Mumford with violating the provision of a sign that prohibits doing X" and "Count 1 charges him with actually doing X" – "persuasive" and dismissed Count 1. Id.

Thus, as the government denotes, "the Mumford court did not engage in the required Blockburger analysis in making its finding." Pl.'s Resp. to Mot. Dismiss 14 (doc. 48). Undertaking such an analysis in the case at bar reveals that each regulation requires proof of a fact that the other regulation does not so require.

To establish a violation of 41 C.F.R. § 102-74.385, the government must prove, amongst other elements, that the defendant received a lawful direction from an FPS officer or other authorized individual and failed to comply with that order. See United States v. Brasch, 1996 WL 720090, *3-4 (S.D. N.Y. Dec. 12, 1996), aff'd, 205 F.3d 1325 (2d Cir. 1999) (outlining the elements of the predecessor to 41 C.F.R. § 102-74.385). To establish a violation of 41 C.F.R. § 102-74.390(b), the government must prove that the defendant knowingly entered federal property and unreasonably obstructed the usual use of entrances, offices, or parking lots. United States v. Zagorovskaya, 2014 WL 12665158, *3 (C.D. Cal. Oct. 8, 2014), aff'd, 628 Fed.Appx. 503 (9th Cir. 2015).

Section 102-74.385 clearly requires proof of an element that § 102-74.390(b) does not: there must be a lawful verbal direction that was not obeyed. The more difficult question is whether § 102-74.390(b) requires proof of any element that § 102-74.385 does not. Section 102-74.390(b) expressly pertains to the unreasonable obstruction of usual entrances. Section 102-74.385, the lawful order regulation, is written more broadly and technically does not pertain to the obstruction of an entrance. It simply states that "[p]ersons in and on property must at all times comply . . . with the lawful direction of Federal police officers and other authorized individuals" and can therefore cover any range of illegal conduct on federal property, not just the unreasonable obstruction of

entrances. Id. Because each regulation requires proof of distinct elements, the charges brought in this case are not multiplicitous. See, e.g., United States v. Bedoya, 671 Fed.Appx. 971, 972 (9th Cir. 2016) (affirming convictions for violations of 41 C.F.R. § 102-74.390(b) and 41 C.F.R. § 102-74.385). Defendants' motion to dismiss is denied.

## II. Motion for a Jury Trial

Defendants concede they do not have a constitutional or statutory right to a jury trial but nonetheless ask the Court to grant one at its discretion. Defs.' Mot. Jury Trial 4-12 (doc. 39). Assuming, without deciding, that a magistrate judge possesses such discretion, the Court nevertheless declines to order a jury trial. The cases cited by defendants indicate that a jury trial for a petty offense may be appropriate under highly unusual or unique circumstances. Id. at 8-12 (citing United States v. Greenpeace, Inc., 314 F.Supp.2d 1252 (S.D. Fla. 2004); and United States v. Rodriguez, 2010 WL 11531202 (D. Idaho Oct. 15, 2010)). Notably, as Rodriguez emphasized, "virtually all Class B misdemeanors need not be tried by a jury" – only when the specific facts indicate that the case presents something other than a "run-of-the-mill petty offense" is "deviation from this general rule . . . well-suited." Rodriguez, 2010 WL 11531202 at *1.

Here, defendants assert that whether their case presents a "matter of public interest" is "[t]he overarching factor" and "central to the Court's decision." Defs.' Reply to Mot. Jury Trial 7 (doc. 50); see also Defs.' Mot. Jury Trial 2-3, 10-12 (doc. 39) (relying primarily on the public interest and implicated First Amendment rights as factors weighing in favor of a jury trial). Aside from the fact that none of the precedent cited by defendants support such a proposition, permitting a jury trial for a petty offense predominately based on the likelihood of local media attention is neither practicable nor consistent with notions of fundamental fairness.

Simply put, this case does not present circumstances sufficient to justify a discretionary jury trial for a petty offense. Significantly, it concerns Class C misdemeanors, pursued through an Information[6] (as opposed to an indictment), that are fairly standard. There are no novel questions posed nor untested or stale legal theories. Indeed, as both parties surely recognize, federal misdemeanor citations issued to protestors are common. There is also no significant risk of jail time and the amount of potential restitution sought does not convert these charges into more serious offenses. Pl.'s Resp. to Mot. Jury Trial 14 n.11 (doc. 46); see also Blanton v. N. Las Vegas, Nev., 489 U.S. 538, 544 (1989) (possibility of a restitution order does not convert a petty offense into a serious offense for the purposes of the Sixth Amendment).

In sum, defendants have not shown that the facts of this case warrant divergence from the general rule providing for bench trials of petty offenses. See Mumford, 2017 WL 652449 at *2 (court "declin[ing] to exercise its discretion to order a jury trial" in relation to charges brought under 41 C.F.R. § 102-74.390 and 41 C.F.R. § 102-74.385, in a case that had garnered significant media attention); see also Stansell, 847 F.2d at 612 n.3 (denying the defendant's motion for a jury trial and noting "[i]t has been a common practice to have bench trials for cases under [the predecessor to 41 C.F.R. § 102-74.385 and other subparts, including the predecessor to 41 C.F.R.

---

[6] Defendants assert the "government's choice to file an Information rather than proceed on the CVB docket as it would any other class C misdemeanor . . . means that, if convicted, defendants' names are more likely to appear in criminal background checks." Defs.' Mot. Jury Trial 2-3, 11 (doc. 39). Essentially, defendants maintain that the government's choice of charging instrument increases the seriousness of the offense. Yet, as the government observes, "the offenses defendants are charged with remain the same and the maximum penalty remains the same" irrespective of the charging instrument. Pl.'s Resp. to Mot. Jury Trial 14-15 (doc. 46). In other words, whether pursued through an information or Central Violations Bureau citation, defendants' criminal records will reveal the presence of a misdemeanor if convicted. Critically, defendants have not cited to, and the Court is not aware of, any authority that supports the existence of a material distinction between initiating the trial of a misdemeanor charge through an information and a citation, and both are sufficient under Fed. R. Crim. P. 58(b)(1).

§ 102-74.390], even when the first amendment is undoubtedly implicated") (collecting cases). Accordingly, defendants' motion for a jury trial is denied.

## CONCLUSION

For the foregoing reasons, defendants' Joint Motion for a Jury Trial (doc. 39) and Motion to Dismiss (docs. 43, 47) are denied.

IT IS SO ORDERED.

DATED this 7th day of March, 2019.

                         /s/ Jolie A. Russo
                              Jolie A. Russo
                     United States Magistrate Judge